## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

---

VIRGINIA MARTINEZ,
on behalf of MICHAEL A. MARTINEZ,

     Plaintiff,

v.                                                         Civil No. 00-0585 BB/WWD

LARRY G. MASSANARI,
Acting Commissioner of Social Security,

     Defendant.[1]

## MAGISTRATE JUDGE'S AMENDED PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1.   THIS MATTER comes before the Court upon Plaintiff's Objections to the Magistrate

Judge's Proposed Findings and Disposition, filed May 21, 2000.  Initial findings were entered

May 9, 2001.   Upon review of the record, I find that the proposed findings should be amended to

reflect Plaintiff's sole objection regarding the date benefits should cease, which I find to be well-

taken.  See ¶ 12, below.

    2.   Plaintiff's Motion to Reverse and Remand for a Rehearing was filed on December 18,

2001.  The Commissioner denied Social Security Disability Insurance benefits filed on behalf of

Michael Martinez, deceased, by his widow, Virginia Martinez.  Mr. Martinez was a "younger

---

    [1]  President Bush designated Larry G. Massanari as Acting Commissioner of Social
Security, effective March 29, 2001.  In accordance with Rule 25(d)(1) of the Federal Rules of
Civil Procedure, Larry G. Massanari should be substituted for Kenneth S. Apfel as the defendant
in this suit.   No further action need be taken to continue this suit by reason of the last sentence of
§ 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

individual" during the relevant period of time.  He was a high school graduate and had additional training as a plumber and pipe-fitter.  His past relevant work history was as a pipe fitter.  Mr. Martinez died on September 6, 1992.  Cause of death was accidental, arising from combined ethanol (alcohol) and amitriptyline (Elavil) poisoning.  Tr. at 109.

   3.   In the application for benefits, Ms. Martinez alleged that her husband's disability commenced on April 19, 1986, as a result of diabetes, hypertension, hypercholesterolemia, angina, hemophilia, sleep apnea, and a low back injury with compression fracture.

   4.   The Commissioner's Administrative Law Judge ("ALJ") found that Mr. Martinez could perform sedentary work and was not disabled under the framework of "grid" Rule No. 202.21. See 20 C.F.R., Pt. 404, Subpt.P  App.1.   The Appeals Council denied Plaintiff's request for review.  Ms. Martinez then appealed the ALJ's decision to federal court.  See Martinez o/b/o Martinez v. Chater, Civil No. 95-0393 SC/RLP (Tr. at 202-14).  The United States District Court remanded the case for further development of the record, finding that the sedentary residual functional capacity ("RFC") finding was not supported by the substantial evidence, that the findings regarding Mr. Martinez' nonexertional impairments were nonexistent, and that the ALJ had failed to address Mr. Martinez' depression.

   5.   At the hearing on remand, the ALJ took testimony from Ms. Martinez and a vocational expert ("VE").  The expert testified that Mr. Martinez could not perform his past relevant work as a pipe fitter, but he could perform the jobs of cashier and ticket seller.  Tr. at 384-85.  Based on the VE's testimony, the ALJ found that Mr. Martinez' impairments did not preclude the performance of sedentary work and that there were a significant number of jobs in the regional economy that Mr. Martinez could perform.  Tr. at 191, 196, 199.  The Appeals

Council declined Ms. Martinez' request for review of that decision.  Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

6.   The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.  Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted).  A decision not supported by substantial evidence "must be reversed."   Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).  This Court also must reverse if the Commissioner failed to apply correct legal standards, or failed to provide this court with sufficient reasoning for it to determine whether the proper legal analysis was conducted.  Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984).

7.   Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the RFC finding is not supported by substantial evidence and is contrary to law; (2) the finding that Mr. Martinez' complaints of pain were not credible to the extent alleged is not supported by substantial evidence and is contrary to law; and (3) the ALJ's finding that consideration of Mr. Martinez' December 21, 1989 application for benefits is precluded by the application of res judicata is contrary to law.

8.   "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. §423 (d)(1)(A)).  Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  Id.; see 20 C.F.R. § 404.1520(a - f).  The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled.  Id. (citations omitted).   At step five in this process, the

3

burden shifts to the Commissioner to show that the claimant has a residual functional capacity ("RFC") to do work in the national economy other than  past relevant work.  Thompson at 1487 (citations omitted).

9.    The record contains evidence of Mr. Martinez's various impairments. He had history of hemophilia, which was diagnosed when he was a child, hypertension and chest pain for which he was prescribed nitroglycerin.  He sought treatment for chest pain in 1992 and although a myocardial infarction was ruled out, a treadmill test showed that he had very poor aerobic capacity.  Tr. at 101.  His treating physician, Margaret Royson, D.O., recommended a strict diabetic and low fat diet.

10.    Mr. Martinez was also under treatment in 1992 for new onset diabetes mellitus, hypertension, obesity, hypercholesterolemia, atypical angina, sleep apnea and hemophilia.  In 1988, Mr. Martinez was diagnosed with nocturnal desaturation for which he had to take oxygen at night.  Tr. at 313-14.  Mr. Martinez suffered from depression.  During these periods, he wanted to be alone.  He also had a severe drinking problem.  He drank 1 to 2 pints of vodka each day and smoked cigarettes.  Tr. at 370-71.

11.    This case presents in a rather difficult posture, because the person being assessed in this case is deceased.  Nevertheless, after a careful review of the record, I find that the ALJ erred in concluding that Mr. Martinez was not disabled.   On first remand from the district court, the ALJ attempted to obtain additional information regarding Dr. Royson's treatment notes, Tr. at 376-77, and on Mr. Martinez' use of oxygen therapy during the day, Tr. at 387.  The attempt was unsuccessful, and the ALJ was left to make his findings on the available record.

12.    Given that Mr. Martinez is deceased, remand for further inquiry would be pointless.

4

At the same time, I find there is sufficient question as to whether the ALJ's findings were based on substantial evidence and that therefore the case should be reversed, but only as to the period of time from March 21, 1990 to August 1992, the month preceding the date of Mr. Martinez' death.

**First Alleged Error**

13.   Plaintiff alleges that the ALJ's residual functional capacity finding is not supported by substantial evidence and is contrary to law.  The ALJ relied on the findings of Nancy Nickerson, M.D., a state agency physician who made conclusions after reviewing the file (Mr. Martinez was deceased at the time).

14.   Plaintiff asserts several bases for the allegation: the inconsistency between Dr. Nickerson's findings and those of Dr. Royson, a treating physician; the weight the ALJ gave to Dr. Nickerson's findings; and the ALJ's failure to consider Mr. Martinez' nonexertional impairments in determining his RFC.  Plaintiff also notes that Dr. Nickerson's report was in the record prior to remand, and that further reliance on this report was therefore incorrect.

15.   Defendant contends that even though Dr. Nickerson's report was part of the original record, the remanding court did not make specific findings on this report, and that on remand the ALJ did not rely exclusively on Dr. Nickerson's report, but also considered the vocational expert's ("VE") testimony and further testimony by Plaintiff, Mr. Martinez' wife.  Reliance on this testimony still does not support the ALJ's decision.  The hypothetical posed by the ALJ to the VE started out with the faulty assumption that Mr. Martinez had a capacity for sedentary work,  Tr. at 184, and Ms. Martinez' testimony was inconsistent with some of the ALJ's findings regarding credibility and the severity of Mr. Martinez' nonexertional impairments, as I discuss below.

16.   Dr. Royson, a treating physician, opined in a May 1992 letter that Mr. Martinez was

5

a "poor candidate for employment at this time." Tr. at 101.   A treating physician's opinion must

be given substantial weight unless good cause is shown to disregard it, but may be rejected "if it is

brief, conclusory, and unsupported by medical evidence."  See Allison v. Heckler, 711 F.2d 145,

148 (10th Cir.1983).  The ALJ relied instead on Dr. Nickerson's RFC assessment that Mr.

Martinez had the ability to do sedentary work, without stating his reasons for discounting Dr.

Royson's opinion.  Tr. at 36; see Frey v. Bowen, 816 F.3d 508, 513 (10th  Cir. 1987) (if the

opinion of the claimant's physician is to be disregarded, specific, legitimate reasons for this action

must be set forth).

    17.   The record also contains the RFC assessment done by another DDS physician who

stated that Mr. Martinez had the exertional capacity to do light work, yet the ALJ chose to rely

on Dr. Nickerson's opinion.  The ALJ found this opinion to be supported by testimony and

evidence concerning Mr. Martinez' daily activities.  Tr. at 195-96.   However, based on a review

of the record, these findings regarding Mr. Martinez' daily activities are insufficient to establish

that Mr. Martinez could work at a sedentary job, or to establish a noncredibility determination.

See SSR 96-6p ("Policy Interpretation") (opinions of state agency physicians can be given weight

only insofar as they are supported by evidence in the case record and consistent with the record as

a whole).

    18.   Plaintiff's contention that the ALJ failed to consider Mr. Martinez' nonexertional

impairments, viz., his back pain and sleep apnea, is well-taken.  The ALJ stated in his decision that

there was "no longitudinal medical history for treatment of disabling pain."  Tr. at 196.  While the

evidence may not support a finding that Mr. Martinez' back pain precluded him from working at

all, see Brown v. Bowen, 801 F.2d 361, 362 (10th Cir. 1986) (a finding of disability requires more

than mere inability to work without pain), the record contains evidence that the pain was significant enough that it should have been considered, even if was not disabling.  See Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993).  Mr. Martinez told Dr. Schneider in January 1990 that his "major limitation is low back pain," and that the pain remains at a constant level "4" out of "10," but reached "10" intermittently.  Tr. at 315.  Dr. Schneider's diagnosis was "chronic low back pain with some history of radicular involvement, but with no definite findings of same on exam."  Id.  In September 1988, when he saw Dr. Jones, Mr. Martinez' "main complaint" was back pain.  Tr. at 277.  On straight leg rising, he had lower back pain at 60 degrees.

19.   With regard to his sleep apnea, the ALJ did omit discussion of the impairment in his decision, although he did make considerable inquiry into the impairment at the hearing.   The ALJ was interested in  looking for some documentation of a recent increase in use by Mr. Martinez. Tr. at 389-90.   He posed questions regarding the extensiveness of Mr. Martinez' use of oxygen during the day and acknowledged that Mr. Martinez needed to use it at night, otherwise he had a tendency to stop breathing.  Tr. at 389.  The ALJ suggested ways to obtain additional evidence on the issue, such as asking Plaintiff to see if she could locate the oxygen supplier, and suggesting obtaining records at the UNM Family Practice Center.

20.   At the hearing, Ms. Martinez testified that her husband would use the oxygen at night, but remove the mask at times when the oxygen started to dry him up.  Tr. at 366.  She also stated that he started to have trouble breathing and start to choke, even on 20-minute drives for his medical appointments, but the oxygen equipment was not portable.  Tr. at 367.   At times, he would fall asleep after a few minutes riding in the car, and have very heavy breathing.  Tr. at 368. She also said that he would also fall asleep at home, two or three times a day for 20 to 45 minutes

at a time.  Tr. at 369, 380.  Ms. Martinez testified that when at home, Mr. Martinez started using

the oxygen from about 9:30 in the morning and continue for most of the day, although he would

remove it for periods of time he would spend with his boys when they returned home from school.

Tr. at 368.

21.    Notwithstanding this testimony, and without making any determination regarding

Ms. Martinez' credibility the ALJ did not make any findings in his decision concerning the effects

of Mr. Martinez' sleep apnea on his ability to work.  Although there was a problem obtaining

medical records regarding Mr. Martinez' need for oxygen therapy during the day, Tr. at 389, the

effect of the impairment on Mr. Martinez during the day (and therefore having a possible impact

on his ability to work) was substantiated by his widow's testimony.   Yet this nonexertional

impairment was not considered or discussed in the ALJ's decision.   There was evidence in the

record that Mr. Martinez' sleep apnea/oxygen desaturation problem induced sleepiness and

difficult breathing during the day.   The VE acknowledged that the need to lie down twice a day

for at least 45 minutes at a time would virtually eliminate all jobs.  Tr. at 388.

**Second Alleged Error**

22.    Plaintiff alleges that the finding that Mr. Martinez' complaints of pain were not

credible to the extent alleged is not supported by substantial evidence and is contrary to law.  The

ALJ determined that Mr. Martinez' pain was moderate and that it did not reduce his RFC below

the wide range of sedentary work prior to December 31, 1991.  Tr. at 196.   This determination

was largely based on what the ALJ considered to be a lack of "longitudinal medical history for

treatment of disabling pain," as well as Mr. Martinez' daily activities.  However, I have already

found the ALJ's assessment of Mr. Martinez' complaints of back pain to be faulty in that they are

8

not based on substantial evidence from the record, see ¶ 17.

23.   I also find that the ALJ's assessment of Mr. Martinez' daily activities are inconsistent with the available evidence.  The ALJ stated that he had "good daily activities, cared for his personal needs, took walks and his prescribed course of treatment was diet, alcohol and smoking cessation and exercise." Tr. at 195-96.  Yet the ALJ noted that, according to Plaintiff's testimony, Mr. Martinez could not put on his shoes and socks without help.  Tr. at 193.  As noted in Plaintiff's brief, the ALJ's findings conflict with documentation in the record that Mr. Martinez did *not* clean house, prepare meals, wash dishes or clothes, shop for food, maintain his yard, or do household repairs.  Tr. at 284, 321.

24.   Contrary to Defendant's position, the ability to bathe, brush one's teeth and change one's clothes does not sufficiently support a finding that a claimant can work.   Ms. Martinez testified that sometimes her husband would work in the yard or do work on someone's car and go camping once or twice a month.  Tr. at 377-78.   In light of the other medical evidence concerning Mr. Martinez' impairments and his widow's other testimony, these activities also do not support a finding that Mr. Martinez could work.  Sporadic diversions do not establish that a person is capable of engaging in substantial gainful activity.  See Broadbent v. Harris, 698 F.2d 407 (10th Cir.1983) (where claimant had performed a few household tasks, worked on his cars and had taken an occasional trip in a camper and had driven to California), cited in Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984).

25.   Thus, I find that the ALJ's noncredibility determination was not based on substantial evidence and was contrary to law.

**Third Alleged Error**

26.   Plaintiff contends that the ALJ's finding that consideration of Mr. Martinez'

December 21, 1989 application for benefits is precluded by the application of <u>res judicata</u> is

contrary to law.  Prior to the application which is the subject of these findings, Plaintiff had filed

an application for benefits on December 21, 1989, which was denied on March 21, 1990.  No

request for reconsideration or for review (administrative or judicial) was filed.  The March 21,

1990 denial thus became the final decision of the Social Security Administration.  In his October

8, 1998 decision on the present application, the ALJ determined that there was not good cause to

reopen the application and that therefore the earlier (March 21, 1990) denial of benefits was <u>res</u>

<u>judicata</u>.  <u>Tr. at 187-88</u>.

27.   Plaintiff alleges that the denial notice Mr. Martinez received violated his due process

rights because it mislead him regarding the right to file a new application.  Plaintiff also alleges

that the notice did not inform her husband that failure to appeal the denial resulted in loss of

benefits.  Plaintiff is correct in this representation of the facts concerning the initial denial notice

of March 19, 1990.  <u>Tr. at 29</u>.

28.   However, Plaintiff omits that a letter dated only two days after the initial notice *does*

inform Mr. Martinez of his appeal rights.  This notice informed Mr. Martinez about the 60-day

time limit, <u>Tr. at 298</u>, and also specifically advised him that "[y]ou might lose benefits if you file a

new application instead of filing an appeal." <u>Tr. at 299</u>.  I find this notice to be sufficient in

providing Mr. Martinez with information of his appeal rights and find that it does not violate his

due process rights.  Therefore, benefits should be calculated from the period of March 21, 1990,

to the date Mr. Martinez was last insured.

29.   In sum, I find that: (1) the RFC finding is not supported by substantial evidence and

is contrary to law and that (2) the finding that Mr. Martinez' complaints of pain were not credible to the extent alleged is not supported by substantial evidence and is contrary to law.  However, I find that the ALJ's finding that consideration of Mr. Martinez' December 21, 1989 application for benefits is precluded by the application of <u>res judicata</u> is correct and not contrary to law.

30.  As mentioned above, <u>see</u> ¶ 11, remanding the case for further development or inquiry would be a waste of administrative and judicial resources.  <u>See</u> <u>Sorenson v. Bowen</u>, 888 F.2d 706, 713 (10th Cir. 1989) ( reversal is appropriate where additional fact finding would serve no useful purpose).  The ALJ's decision should be reversed, and Plaintiff should be granted disability benefits which are consistent with these findings.

**Recommendation**

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing **[docket # 9]** be GRANTED and that Plaintiff be granted period of disability and disability benefits in accordance with the Social Security Act and which are consistent with these findings.  Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

UNITED STATES MAGISTRATE JUDGE